F. B. WILSON, Administrator, Appellant, v. MARTHA B. NORRIS, Executrix, Appellee.

**EXECUTORS AND ADMINISTRATORS: Settlement of Estate—Estoppel.** A residuary legatee who causes the executor to obtain a new mortgage as security for an indebtedness due the estate, and thereupon to cancel a pre-existing mortgage which secured the same debt, is necessarily precluded from holding the executor personally liable in case the new mortgage proves inadequate as a security.

**Headnote 1:** 24 C. J. p. 213 (Anno.)

*Appeal from Delaware District Court.*—GEORGE W. WOOD, Judge.

NOVEMBER 15, 1927.

An action to recover on a claim filed by F. B. Wilson, as administrator of the estate of Marie Hubbell, deceased.—*Affirmed.*

*A. M. Cloud* and *George S. Banta,* for appellant.

*McCoy & Beecher,* for appellee.

ALBERT, J.—Marie Hubbell died testate on the 6th of January, 1921. Letters testamentary were issued under her will on the 20th day of the same month. She made seventeen special bequests in her will, and named Sarah Lawson, of Greeley, Iowa, residuary legatee; also named W. H. Norris as executor thereof. He was appointed by the court, took charge of the estate, and proceeded to administer thereon. Before he completed the administration of the estate, he died, on the 20th day of August, 1922, and Martha B. Norris, his wife, was appointed executrix. She published statutory notice of her appointment, the first publication being on September 9, 1923. On November 29, 1922, F. B. Wilson was appointed administrator *de bonis non* of the estate of Marie Hubbell, deceased, and qualified as such on the next day.

On September 6, 1923, the claimant herein filed his claim

in the district court, and on the 7th, a copy of this claim was served upon Martha B. Norris. Among the assets of the Hubbell estate that passed into the hands of Norris as executor was a note for $10,000, made by John Derr, and secured by mortgage for $15,000 on 153 acres of land in Clayton County. The undisputed record is that this mortgage was executed to Norris, and covered a note for $10,000 and a note for $5,000. The $10,000 note had been negotiated to Mrs. Hubbell, during her lifetime, by Norris. The $5,000 note had been negotiated to one Mrs. Carhart. There was another mortgage and note in the Hubbell estate, known as the "Ipswich mortgage loan," of $7,500. On the 28th day of February, 1922, Norris filed what he designates as his "Executor's Final Report," which was, however, not acted upon by the court. In this he reports on hand the two loans, the John Derr loan and the Ipswich loan, as assets of the estate. The evidence in the case shows that, subsequent to the last named date, Norris traded the Ipswich mortgage and note to Mrs. Carhart for the second note belonging to the Derr loan, she paying him the difference in cash. This brought into the Hubbell estate both notes secured by the said $15,000 mortgage of Derr. Norris then negotiated with Derr, and took from him a new mortgage and note for the said $15,000, made payable to Sarah Lawson, and thereupon Norris released the original mortgage securing the Derr loan. This transaction is the storm center of the contentions about this claim.

It is claimed at this point, on behalf of the Norris estate, that the taking up of the $5,000 note from Mrs. Carhart and the making of the new mortgage and note in favor of Mrs. Lawson were at Mrs. Lawson's request and solicitation. The record in the case shows that all of the special legacies were paid, except one, and that there were sufficient funds in the hands of the administrator of the estate to pay the same. It is apparent, therefore, that Sarah Lawson is the only party really interested in this question. She being such, if she made an arrangement of this kind with Norris, she would be bound by it. The question, therefore, at this point in the case,—and it is controlling, if found against her,—is, Did she make such an agreement? The lower court held against the administrator of the Hubbell estate, thus holding that she did make such an agreement.

Little good could be accomplished by setting out the evidence in the case in detail. Suffice to say that, in addition to the above matters, the evidence fairly shows that, like all land values in Iowa, the land had depreciated, and the value of the real estate covered by the mortgage was undoubtedly less than the face of the mortgage; and this was probably true at the time the second mortgage was taken by Norris.

The evidence shows further that Norris' wife was the guarantor of the $10,000 note; that he had been the banker and confidential adviser of Mrs. Hubbell during her lifetime. It is the claim of the executor of the Norris estate that, in various conversations with Mrs. Lawson and her husband, John, the matter was discussed as to this mortgage, and the Lawsons expressed themselves as not caring to have what they called a "split" mortgage, saying that it would be to their best interest to have the Carhart note, so that they would hold both notes secured by the mortgage; and it was in pursuance of this talk that Norris did secure the Carhart note, and procured a new mortgage directly to Mrs. Lawson. The administrator of the Hubbell estate had started foreclosure of the second mortgage and note, which foreclosure is still pending. A stipulation was drawn up, in anticipation that all of the parties concerned would sign the same, to the end that the mortgage might be foreclosed, which stipulation provided that the foreclosure should be without prejudice to the rights of any of the parties. This stipulation is of no value in this case, because it was not joined in or signed by the executor of the Norris estate. This second mortgage and the notes accompanying it were turned over to the present administrator of the Hubbell estate shortly after he was appointed, and he has retained the same ever since. Lawson and wife both testified that there never was any agreement that the Carhart note should be bought, nor that the second mortgage and note should be taken from Derr. All such talks and agreements which are testified to by the witnesses for the Norris estate are flatly denied by Mrs. Lawson and her husband. On the other hand, witnesses who are wholly disinterested in this case testify that they were present, and heard the various conversations between Norris and Mr. and Mrs. Lawson in which the whole matter was discussed, and Norris

was told to secure the Carhart note and execute a new mortgage with Derr, covering the $15,000.

There is serious dispute in the record between counsel as to whether this case is at law or in equity. Without passing upon this question, however, we have reached the conclusion, after a review of all of the record and the testimony in the case, that the district court was right in holding that Mrs. Lawson did make such an agreement with Norris prior to his death, and that, in pursuance of that agreement, Norris took this second mortgage and notes. Since we have reached a conclusion in agreement with that of the district court, Mrs. Lawson is in no position to complain about Norris's carrying out the agreement between them.

Numerous other questions are raised and discussed in the case, especially that of the statute of nonclaim; but, under the conclusion we reach in the case, they become immaterial.— *Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ.. concur.